**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **Debra J. Brent,** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**Priority 1 Automotive Group, Inc.** *et al.*, )<br><br>**Defendants.** ) | **Case No.**   **8:14-cv-01705-PWG** |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION**

Date: November 11, 2014

Respectfully submitted,

_____/S/_____
Robert B. Fitzpatrick, Esq.
ROBERT B. FITZPATRICK, PLLC
1825 Connecticut Avenue, N.W., Suite 640
Washington, D.C. 20009-5728
(202) 588-5300 (phone)
(202) 588-5023 (fax)
fitzpatrick.law@verizon.net (email)

_____/S/_____
Ryan Paul Chapline, Esq.
ROBERT B. FITZPATRICK, PLLC
1825 Connecticut Avenue, N.W., Suite 640
Washington, D.C. 20009-5728
(202) 588-5300 (phone)
(202) 588-5023 (fax)
fitzpatrick.law@verizon.net (email)

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.   Introduction ................................................................................................. 1

II.  Standard of Review ..................................................................................... 1

III. Statement of Material Facts, Most of Which Are In Genuine Dispute ................................... 4

IV.  Argument ...................................................................................................... 8

     a. Summary of the Argument ..................................................................... 8

     b. The Defendants Failed to Provide Sufficient and Undisputed Evidence to Establish Whether The Parties Entered Into An Agreement to Arbitrate Employment Disputes ..................... 10

     c. Ambiguity, Contradiction, and No Meeting of the Minds .................................... 11

          i.  *The So-Called Employment Agreement(s)* ............................................ 11

          ii. *The Employment Offer* .................................................................... 13

     d. Insufficient Consideration ..................................................................... 16

V.   Documents and Information Pertinent to the Defendants' Motion Which the Defendants Failed to Produce or Establish ................................ 17

     a. Issues Regarding E-Signature ................................................................ 17

     b. Ability of Employer to Unilaterally Modify ............................................... 20

     c. Contractual Disclaimer ......................................................................... 21

VI.  Rule 56(d) Statement .................................................................................. 21

VII. Request for Hearing .................................................................................... 22

VIII. Conclusion ................................................................................................. 22

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION**

## I. Introduction

Plaintiff, Ms. Debra Brent (hereafter, "Plaintiff" or "Ms. Brent"), acting *pro se* at the time,

filed her original Complaint in the above-captioned matter on May 28, 2014. Doc. 1.[1] Defendants

filed a Motion to Dismiss and to Compel Arbitration under the Federal Arbitration Act ("FAA"), on

August 14, 2014. Doc. 6 (hereafter, "Defendants' Motion").  Ms. Brent, still acting *pro se*, filed an

approximately half-page Opposition to the Defendants' Motion on October 2, 2014. Doc. 14

(hereafter, "Plaintiff's Initial Opposition").  The Defendants filed a reply brief on October 20, 2014.

Doc. 15 (hereafter, "Defendants' Initial Reply").

Following the filing of Defendants' Initial Reply, Ms. Brent retained her undersigned

counsel, who entered their appearances on Ms. Brent's behalf on November 6 and 7, 2014. Docs.

17, 19.  Ms. Brent's counsel simultaneously sought leave via a Motion (Doc. 18) to file a

Supplemental Opposition to the Defendants' Motion.   The Defendants submitted to the Court a

letter dated October 31, 2014 (Doc. 16), which the Court subsequently interpreted, in a paperless

Order (Doc. 20), to be an Opposition to Ms. Brent's Motion to file a Supplemental Memorandum.

In the aforesaid paperless Order of November 7, 2014, this Court permitted the filing of the

aforesaid Supplemental Memorandum on or before today, November 21, 2014, and permitted the

Defendants to file a reply brief thereto on or before fourteen days thereafter. Doc. 20.   This

memorandum constitutes the Supplemental Memorandum which the Court has permitted.

## II. Standard of Review

As the Defendants note in the memorandum in support of the Defendants' Motion (Doc. 6-

1), motions to compel arbitration have been treated by this Court as summary judgment

---

[1] As used throughout this brief, "Doc." shall refer to the document number given the corresponding
filing by this Court's electronic filing (CM/EDF) system.

proceedings, particularly where, as here, the formation or validity of the so-called arbitration agreement is in dispute. *See* Doc. 6-1 at pp. 4-5 (*citing Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) ("motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment"); *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004) (same); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011) (motion to compel arbitration is treated as motion for summary judgment when formation or validity of arbitration agreement is in dispute)).  Moreover, the Defendants, in the exhibits to the Defendants' Motion and the Defendants' Initial Reply, submitted documents outside of the complaint, thus converting the Defendants' Motion to a Rule 56 proceeding. *See, e.g., Wilson-Cook Med., Inc. v. Wilson*, 942 F.2d 247 (4th Cir. 1991) ("[Fed. R. Civ. P.] 12(b) provides that to the extent that the court decides to consider matters outside of the complaint in ruling on a motion pursuant to Rule 12(b)(6), the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.") (internal citations and quotation marks omitted).

While a court may compel arbitration under the FAA if the parties agreed in writing to arbitrate the dispute, *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002), a party can only be "forced" to arbitrate those issues she has expressly agreed to submit to arbitration. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).  As this Court has held, "[b]efore dismissing a suit or compelling arbitration… the court must determine whether the arbitration agreement that is claimed to govern the dispute between the parties is valid and enforceable." *Raglani v. Ripken Prof'l Baseball*, 939 F. Supp. 2d 517 (D. Md. 2013) (citing *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 603, 605-06 (4th Cir. 2013); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937-38 (4th Cir. 1999)).  Whether an arbitration agreement exists depends on "state-law principles that govern the formation of contracts." *Id.* at 944.  This inquiry "is focused both on ensuring there was adequate contractual formation in the agreement, including valid consideration, and that the agreement itself is not unfair,

unconscionable, or otherwise defective in ensuring the claimant can 'effectively… vindicate his or her statutory cause of action in the arbitral forum.'" *Raglani*, 939 F. Supp. 2d at 521 (quoting *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000)). *See also Hooters of Am.*, 173 F.3d at 938. Further, as the Tenth Circuit recently held:

> Everyone knows the Federal Arbitration Act favors arbitration. **But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated.** While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011).

*Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (emphasis added). *See also Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) ("while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made). Along those same lines, where the making of the so-called agreement is at issue, Section 4 of the FAA provides that "the court shall proceed summarily" to a trial on that issue. 9 U.S.C. § 4.

Finally, as the Maryland Court of Appeals has long held:

> [N]o action will lie upon a contract, whether written or verbal, where such a contract is vague or uncertain in its essential terms. The parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties. Such a contract cannot be enforced in equity nor sued upon in law. *DeBearn v. DeBearn*, 126 Md. 629, 633, 634, 95 A. 476; *Thomson v. Gortner*, 73 Md. 474, 21 A. 371; *Hoffman v. Chapman*, 182 Md. 208, 211, 34 A. 2d 438; *Martz v. Jones*, 189 Md. 416, 423, 56 A. 2d 30. For a contract to be legally enforceable, its language must not only be sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do, but also must be sufficiently clear and definite in order that the courts, which may be required to enforce it, may be able to know the purpose and intention of the parties. *Reiser Co. v. Baltimore Radio Show*, 169 Md. 306, 312, 181 A. 465; *H. W. Kastor & Sons Advertising Co. v. Grove Laboratories*, D. C., 58 F. Supp. 1011, 1015.

*Robinson v. Gardiner*, 196 Md. 213, 217 (Md. 1950).

### III. Statement of Material Facts, Most of Which Are In Genuine Dispute

1) At some point during Ms. Brent's employment by the Defendants, the Defendants presented Ms. Brent with a document entitled "Offer of Employment Confirmation". Exhibit A to Defendants' Motion. Doc. 6-2 at p. 4 (hereafter, the "Employment Offer").[2]

2) The sole substantive issue addressed in the Employment Offer was the compensation structure which would govern Ms. Brent's tenure with Defendants following a change in ownership. *Id.*

3) Purportedly attached to the Employment Offer was the "standard BMW of Rockville Client Advisor Compensation Plan."[3] *Id.*

4) In addition to specifying Ms. Brent's start date, job title, and compensation structure following BMW's change in ownership, the Employment Offer also contained the following text:

> Terms of Employment: Subject to company policies and provisions contained in standard employee information handbook. Each employee's compensation plan is deemed as a confidential matter. Under no circumstances is it to be discussed or shared with fellow employees other than direct managers or senior management of the company. Violation of this policy can cause dissatisfaction or effect the morale of other employees and in turn effect an individual's productivity. A violation of this policy is against company policy and as such may result in actions by the company that could include termination of employment.

*Id.*

5) The Employment Offer is signed by both Ms. Brent and an unidentified "manager". *Id.*

6) Neither individual provided the date on which they executed the Employment Offer, and it is not signed by a "Senior Management" official, as that third signature line is left blank. *Id.*

---

[2] The Defendants state in Ms. Nancy Delach's affidavit, Doc.15-1, that Ms. Brent was presented with the Employment Offer in March of 2012, but the Employment Offer, while containing Ms. Brent's start date, is not otherwise dated.

[3] Whether this document was actually attached to the Employment Offer has not been established by the Defendants. In their filings with this Court, the Defendants did not provide any such attachment together with the Employment Offer.

7) As is discussed in Section IV(c)(ii), the meaning of the "[s]ubject to company policies…" line in the Employment Offer forms has not been established by the Defendants, and is the basis for one of the many genuine issues of material fact between the parties, as those disputes directly pertain to whether there was an agreement between the parties to arbitrate employment-related disputes.

8) The Defendants have not asserted that, at the time that Ms. Brent signed the Employment Offer, she was provided with a copy of the Defendants' "standard employee information handbook" (hereafter, the "Handbook"), attached as Exhibit B to both the Defendants' Motion and the Defendants' Initial Reply [4] (Doc. 6-2 at pp. 4-5). *See generally* Defendants' Initial Reply.

9) It is likewise undisputed that the above-cited text provides no indication that the "policies" to which Defendants assert Ms. Brent agreed contain enforceable contractual obligations, or would affect an agreement to commit any disputes to arbitration. Doc. 6-2 at p. 4.

10) The Defendants contend that they provided a copy of the Handbook, as well as other documents, to Ms. Brent for her review and signature later in March of 2012. Doc. 15-1 at pp. 2-4.

11) The Defendants further contend that Ms. Brent reviewed and executed numerous documents on March 19, 2012. *Id.* at p.4.  At that time, according to the Defendants, Ms. Brent allegedly

---

[4] Review of the first page of that exhibit indicates at bottom center that it is page 28 of a larger document. Doc 6-2 at p. 5.  The second page of that same exhibit does not contain a similar page number, and the Defendants do not establish whether that page is a part of the Handbook, or rather, is a part of a separate document. *Id.* at p. 6.  Neither Ms. Brent nor her undersigned counsel have any other portion of said document(s).  It being the movant's obligation to establish the material facts by admissible evidence which is relevant to its motion, Ms. Brent's counsel emailed the Defendants' counsel on November 7, 2014, asking for a full and complete copy of the Handbook. That email is attached hereto as **Exhibit 1**.  As of the date of this filing, Ms. Brent's counsel has not received any response whatsoever to that email.

signed, via e-signature,[5]  six documents, including the: 1) Handbook; 2) Dispute Resolution via

Arbitration Policy; 3) Consent to Obtain Consumer Report Disclosure; 4) Employee

Acknowledgment and Agreement to Comply with Information Security Program; 5)

Acknowledgment of policies pertaining to Motor Vehicle Operating; and 6) Acknowledgment of

Internet Usage Policy  via electronic signature on March 19, 2012. *Id.* at pp. 2-4.  The

Defendants indicate that Ms. Brent reviewed and signed these documents in less than two

minutes – about 20 seconds per document. *Id.* at p. 9.

12) Page 28 of the Handbook contains language which states the following:

> **<u>Binding Arbitration Program</u>**
>
> In an attempt to provide employees with another open and unbiased means of resolving a disagreement or controversy not settled within the normal open door policy process, a binding arbitration program is also available to employees.  Any controversy or claim arising out of, or related to your employment with this Company, shall be settled by arbitration in accordance with the current rules of the American Arbitration Association.  The decision and/or award of the arbitration process, except for mistakes by [sic] law, shall be final and binding upon the parties.  No arbitration shall involve parties other than those in this agreement, its successors, employees, agents and representatives.  The employee consents to having [sic] personal jurisdiction in the State of Maryland and agrees to service of process within this jurisdiction by way of certified mail, return receipt requested, signed by the employee.  The losing party agrees to pay any attorney's fees or costs incurred by the prevailing party, as part of the judgment rendered.  Any and all hearings or proceedings involving arbitration shall be held in Baltimore County, Maryland.
>
> Doc. 6-2 at p. 5.

13) A separate document, Doc. 6-2 at p. 6, contains the following language:

> **<u>ARBITRATION</u>**
>
> The Employee agrees that as a condition of Priority 1 A.G. employment and continued employment, that any and all differences or disputes between the employee and the company shall be settled by the parties or through binding arbitration.  Either side may request that the dispute be submitted for arbitration to

---

[5] As is discussed in Section V(a), the Defendants have failed to establish whether the purported e-signature meets the requirements of the Maryland Uniform Electronic Transactions Act, Md. Commercial Law Code Ann. § 21-101 *et seq.*

the Maryland state board of mediation[6] with the request that a staff member be appointed to act as an arbitrator.  The arbitrator's finding, decision and award shall be final, binding and conclusive on both parties.  Judgment may be entered in any court or forum having jurisdiction.  The losing party agrees to pay any attorney's fees or costs incurred by the prevailing party, as part of the judgment rendered.  Any and all hearings or proceedings involving arbitration shall be held in Baltimore County, Maryland.

[Unsigned Signature Line]                              [Undated Line for Date]

Doc. 6-2 at p. 6.

14) The Defendants have failed to establish that Ms. Brent ever received, reviewed, or signed these documents, either electronically or otherwise. Doc. 14-1 at p. 1. *See also* Ms. Brent's Declaration, attached hereto as **Exhibit 2**.

15) As noted in footnote 4, the Defendants have still not produced to this Court or to Ms. Brent's counsel complete copies of the documents which they claim that Ms. Brent signed.

16) The Defendants also produced a document purporting to be the "E-Signature Log maintained by Priority 1 for employees of the company hired during the timeframe between March 2012 and July 2012[.]" Doc. 15-1 at pp. 9-13.

17) The above Log, without more, establishes, at most, that a User ID, which may or may not have been assigned to Ms. Brent, was used by one or more individual(s) to access an undisclosed website where the individual(s) made use of an undisclosed e-signature program, in a way that

---

[6] Plaintiff's counsel's search, to date, has not uncovered an entity named the "Maryland state board of mediation".  There is, however, an entity named the Maryland Mediation & Conflict Resolution Office ("MACRO").  *See* http://www.marylandmacro.org/.  But, based on a review of the "Finding a Mediator" page on MACRO's website above, it would appear that while MACRO seeks to facilitate the use of alternative dispute resolution ("ADR") services in the state of Maryland, for example, through ADR referral services, it would also appear that MACRO does not directly provide ADR services itself.

caused data to be recorded in two columns of the Log, first purportedly at 10:43 a.m., and the second purportedly at 10:44 a.m. on March 19, 2012. *Id.*[7]

18) The Log contains no information regarding what documents Ms. Brent would have seen, if any, had she logged into the secure website and made use of Defendants' e-signature program. *Id.*

19) The Defendants have failed to establish that Ms. Brent ever signed, whether electronically or otherwise, the Handbook or the five other documents listed above, and particularly the document(s) contained in Exhibit B to the Defendants' Motion and the Defendants' Initial Reply. Doc. 14-1 at p. 1. *See also* Ms. Brent's Affidavit (**Exhibit 2**).

20) Resolution of these disputed issues of material fact will require discovery into several issues, which are discussed in Section V.

**IV. <u>Argument</u>**

<u>**THE DEFENDANTS HAVE FAILED TO ESTABLISH BY MATERIAL FACTS, NOT GENUINELY DISPUTED, THAT AN AGREEMENT TO ARBITRATE WAS FORMED**</u>

    a.   <u>Summary of the Argument</u>

It is elementary that a motion to compel arbitration may be granted only if the undisputed facts establish that the parties entered into an enforceable agreement to arbitrate.  Defendants have fallen far short of this showing.  Defendants argue that Ms. Brent agreed to arbitrate the instant dispute both when she signed the a form describing her compensation plan (the "Employment Offer") and when she allegedly electronically signed Defendants' Employee Handbook and other documents.  In fact, the sentence fragment which Defendants point to as evidence of Ms. Brent's consent is unintelligible, and the single page which they produce from the Employee Handbook is shorn of the context needed to determine whether the *policies* contained therein constitute valid,

---

[7] As discussed in Section V(a), as to the Defendants' affiant, Ms. Nancy Delach, she disclosed nothing in her affidavit, Doc. 15-1, which would qualify her to resolve the many technical questions which are central to establishing these issues.

binding, contractual obligations.  Similarly, the only evidence that Ms. Brent electronically signed the documents identified by Defendants is a heavily redacted "log", the authenticity and accuracy of which Defendants have not established.  Defendants do not even attempt to show that Ms. Brent consented to engage in commerce through the use of her electronic signature, do not offer any explanation as to why the log shows only one signature when Defendants contend that Ms. Brent signed six documents, and do not indicate which signature the log allegedly recorded.  Finally, Defendants neither acknowledge nor address the fatal contradictions between the two arbitration policies by which they contend Ms. Brent is bound.  Among those deficiencies are disagreements regarding the body to perform the arbitration and the binding effect of any arbitral determination.

In sum, Defendants have failed to establish that:

1. Ms. Brent agreed to be bound by the Employee Handbook;

2. That the Employee Handbook contains a valid arbitration agreement;

3. That Ms. Brent consented to engage in commerce through the use of her electronic signature;

4. Which document(s), if any, Ms. Brent electronically signed; and

5. That the parties agreed on the material terms of arbitration in light of the conflicting arbitration provisions.

The lack of Ms. Brent's consent to the use of her electronic signature, coupled with the complete lack of any intelligible document evidencing Ms. Brent's intent to be bound by the Employee Handbook constitute sufficient grounds to deny Defendants motion.  Indeed, the contradictory and unworkable arbitral scheme established by the conflicting arbitration policies, standing alone, constitutes ample justification to deny Defendants' Motion.

Even in the absence of those arguments, however, Defendants have failed to establish by undisputed evidence that the Employee Handbook constitutes a valid contract and that the log

produced by Defendants actually records an e-signature by Ms. Brent which evidences agreement to

a valid arbitration agreement.  The single page produced by Defendants of what appears to be a

lengthy handbook fails to establish that the Employee Handbook was supported by mutual, non-

illusory, consideration.  The printout presented by Defendants is not accompanied by the

undisputed evidence need to establish that it accurately reflects an electronic signature by Ms. Brent

on any particular document – or any document at all.  The resolution to these issues can be had, if at

all, only following discovery into the Employee Handbook and the electronic systems associated

with Defendants' electronic signature software.  Accordingly, should the Court elect not to deny

Defendants' motion outright on any or all of the bases described above, Plaintiff requests that the

Court order the Parties to meet and confer regarding these issues, exchange discovery, and appear

before the Court for summary trial of these issues.

      b.  The Defendants Failed to Provide Sufficient and Undisputed Evidence to Establish Whether The Parties Entered Into An Agreement to Arbitrate Employment Disputes

The Defendants failed to provide sufficient and undisputed evidence to establish whether

the parties entered into an agreement to arbitrate employment disputes.  For example, the

Defendants have only produced one page of what appears to be a voluminous Handbook.  This is

insufficient to establish that the Handbook constitutes a valid agreement to arbitrate.  Likewise, the

Defendants have failed to establish that Ms. Brent electronically received and/or agreed to the

provisions of said Handbook.

Substantial additional information is needed to resolve these disputed material facts.  To aid

the Court in determining whether to grant the Defendants' Motion, Plaintiff requests that the Court

order the parties to meet and confer regarding the scope of necessary discovery.  Following that

exchange of documents and information, Plaintiff requests that, pursuant to Fed. R. Civ. P. 56(d),

the Court convene a summary evidentiary hearing after appropriate discovery.  Plaintiff has filed an

accompanying Rule 56(d) statement, outlining discovery that Plaintiff would seek to undertake should the Court deem that such discovery and evidentiary hearing is necessary.

There exists ample reason, as described below, for the Court to determine that no valid agreement to arbitrate exists.  In brief, the agreements contain fatal contradictions, are unintelligible, and the Defendants do not establish that Ms. Brent consented to conduct commerce through the use of her electronic signature.

      c.   <u>Ambiguity, Contradiction, and No Meeting of the Minds</u>

         *i.  The So-Called Employment Agreement(s)*

As noted above, Exhibit B to the Defendants' Motion contains two separate pages, and the Defendants have not established whether or not they come from the same document.  What is clear is that the Defendants contend that language from both pages make up Ms. Brent's so-called agreement to arbitrate employment-related disputes with the Defendants. See Doc. 6-1 at pp. 3-4. What is noteworthy, however,  is that the two pages do not even agree on the process for arbitration.  As a few examples:

1) The language on the first page of the aforesaid exhibit, under the heading "Binding Arbitration Program" (hereafter , "Clause # 1") provides that "any controversy or claim arising out of, or related to your employment with this Company, shall be settled by arbitration in accordance with the current rules of the American Arbitration Association." Doc. 6-2 at p. 5.  The language on the second page of the exhibit, under the heading "ARBITRATION" (hereafter, "Clause # 2"), provides, by contrast, that "[e]ither side may request that the dispute be submitted for arbitration to the Maryland state board of

mediation[8] with the request that a staff member be appointed to act as arbitrator." *Id.* at p.6;

2) While Clause # 1 provides that employment disputes "shall be settled by arbitration," (*Id.* at p. 5), Clause # 2 more equivocally states that "any and all differences between the employee and the company shall be settled by the parties **or** through binding arbitration." *Id.* at p. 6 (emphasis added); and

3) Clause # 1 provides that "[t]he decision and/or award of the arbitration process, except for mistakes by [sic] law, shall be final and binding upon the parties." *Id.* at p. 5.  Clause # 2 indicates that "[t]he arbitrator's finding, decision and award shall be final, binding, and conclusive on both parties," with no similar exception for mistakes of law. *Id.* at p. 6.

The Defendants drafted these documents and so, these types of ambiguities must be construed against them. *John L. Mattingly Constr. Co. v. Hartford Underwriters Ins. Co.*, 415 Md. 313, 327 (Md. 2010) (holding that "a contract is ambiguous if it is subject to more than one interpretation when read by a reasonably prudent person", and "it is a basic principle of contract law that, in construing the language of a contract, ambiguities are resolved against the draftsman of the instrument") (internal quotation marks and citations omitted).

The Maryland Court of Appeals has long held that exactly these sorts of ambiguous and contradictory clauses suggest that there was no meeting of the minds, and that there therefore exists no contract:

---

[8] See footnote 6.

> [N]o action will lie upon a contract, whether written or verbal, where such a contract is vague or uncertain in its essential terms. The parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties. Such a contract cannot be enforced in equity nor sued upon in law. *DeBearn v. DeBearn*, 126 Md. 629, 633, 634, 95 A. 476; *Thomson v. Gortner*, 73 Md. 474, 21 A. 371; *Hoffman v. Chapman*, 182 Md. 208, 211, 34 A. 2d 438; *Martz v. Jones*, 189 Md. 416, 423, 56 A. 2d 30.   For a contract to be legally enforceable, its language must not only be sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do, but also must be sufficiently clear and definite in order that the courts, which may be required to enforce it, may be able to know the purpose and intention of the parties. *Reiser Co. v. Baltimore Radio Show*, 169 Md. 306, 312, 181 A. 465; *H. W. Kastor & Sons Advertising Co. v. Grove Laboratories*, D. C., 58 F. Supp. 1011, 1015.

*Robinson v. Gardiner*, 196 Md. 213 (Md. 1950).

### ii.   The Employment Offer

More fundamentally, the Defendants have not established that Ms. Brent ever agreed to the provisions of the (or to the provisions of the second page of Defendant's Exhibit B, in the event that it is from a separate document).  The document entitled "Offer of Employment Confirmation," which is attached as Exhibit A to Defendants' Motion, Doc. 6-2 at p. 4 (the "Employment Offer"), states , in relevant part, as follows:

> <u>Compensation</u>: See attached standard BMW of Rockville Client Advisor Compensation Plan.

> <u>Terms of Employment</u>: Subject to company policies and provisions contained in standard employee information handbook.  Each employee's compensation plan is deemed as a confidential matter.  Under no circumstances is it to be discussed or shared with fellow employees other than direct managers or senior management of the company.  Violation of this policy can cause dissatisfaction or effect the morale of other employees and in turn effect an individual's productivity.  A violation of this policy is against company policy and as such may result in actions by the company that could include termination of employment.

*Id.*[9]  The remainder of the Employment Offer only provides the name and address of Defendant

Priority 1 Automotive Group, Inc., Ms. Brent's name and start date, her job title, and signature lines.

Setting aside for now the "[s]ubject to company policies…" clause, the remainder of the operative

language in the Employment Offer speaks exclusively of issues regarding compensation.  Along

those lines, note that a "Compensation Plan" was purportedly attached to the Employment Offer (at

least, it was so attached according to the text of the Employment Offer itself), while the Handbook

is not similarly listed as having been attached.  Given that the remainder of the document speaks

exclusively about issues regarding compensation, the most logical way to read the fragmented non-

sentence "Subject to company policies and provisions contained in standard employee information

handbook," is to have that clause apply to the same compensation provisions.  That is, rather than

reading that sentence fragment, as the Defendants appear to do (see Doc. 15 at pp. 1-2), as

modifying "Terms of Employment:", based upon the contents of the Employment Offer, that

language more logically modifies the following details regarding the employee's compensation plan.

Reading the sentence fragment that way, the language makes sense: "Subject to company policies

and provisions contained in standard employee information handbook[, e]ach employee's

compensation plan is deemed as a confidential matter…".  Thus, to the extent that the Defendants

---

[9] The Employment Offer is unlawful on its face.  Its prohibition on Defendants' employees discussing their compensation with their coworkers is a *per se* violation of Section 7 the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157, which provides employees with the right to make efforts to organize and discuss the terms of their employment, which can include salary and benefits information.  *See, e.g., Ambriola Co. v. Unnamed Charging Party*, No. 22-CA-061632 (NLRB 2011) (finding that an employer violated the NLRA by prohibiting an employee from discussing his wages with co-workers, and for firing the employee for violating that policy) (information about the above case available here: http://www.nlrb.gov/west-caldwell-new-jersey); *Double Eagle Hotel & Casino*, 341 N.L.R.B. 112 (2004), *enforced at* 414 F.3d 1249 (10th Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006) (finding that an employer could limit employee discussions of working conditions, including pay issues, in areas frequented by customers, but could not impose a complete ban on such discussions without violating the NLRA); *Custom Cut, Inc. v. Sw. Reg'l Council of Carpenters, United Bhd. Of Carpenters & Joiners of America*, Case 28 CA-18062 (NLRB Sept. 11, 2003), opinion available here: file:///C:/Users/LawClerk/Downloads/340_17.pdf.pdf (violation of the NLRA by prohibiting discussion of wages).

seek to rely upon the Employment Offer, and it alone, to prove that Ms. Brent purportedly agreed to the terms of the Handbook as they applied to anything but her compensation, that conclusion is far from clear, much less sufficiently established by the movant, the Defendants.[10]

---

[10] A recent opinion of the Sixth Circuit, *Hergenreder v. Bickford Senior Living Group, LLC*, 656 F.3d 411 (6th Cir. 2011), is particularly illustrative on this point.  In that case, an employee signed an acknowledgement that she had read and understood the terms of an employee handbook. *Id.* at 417. The handbook, in turn, referred the employee to a "Dispute Resolution Procedure" (DRP). *Id.* Touching briefly on the issue discussed in Section V(c), the handbook contained a contractual disclaimer, and thus was not contractually binding.[10] *Id.* at 418.  While the handbook referenced the DRP, the DRP was not attached to the handbook. *Id.*  And, while the DRP contained language regarding binding arbitration, no such language was contained in the handbook. *Id.* at 414.  The employee claimed that she had never seen nor signed the DRP. *Id.* at 415.  On those facts, the Sixth Circuit found as follows:

> We agree with Hergenreder [the employee]. There was neither an offer nor an acceptance. The objective signs that Bickford [the employer] made Hergenreder an offer to be part of the arbitration agreement are few in number. The best Bickford can say is that Hergenreder was informed that, for 'Employee Actions,' she should 'refer' to the DRP. In Bickford's view, Hergenreder 'was or should have been aware of the DRP and so is bound by it.' Bickford Br. at 13 (capitalization removed). Yet she was not required to refer to the DRP; the 'handbook does not constitute any contractual obligation on [Hergenreder's] part nor on the part of Bickford Cottage[.]' Hergenreder Br. at Ex. 6 (Receipt of Employee Handbook Form). Moreover, the simple reference in the Handbook to 'the P10 Eby Companies Dispute Resolution Procedure' for 'details' is not 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.' *Kloian*, 733 N.W.2d at 770 (internal quotation marks omitted). This statement says nothing about arbitration, and it says nothing that would indicate to Hergenreder that accepting or continuing her job with Bickford would constitute acceptance. Indeed, it is incorrect to conflate the fact that Hergenreder knew generally of the DRP with the notion that she knew of the arbitration language—and Bickford's desire to create an arbitration agreement— contained within the DRP. Were Hergenreder required to read, or even notified of the importance of reading, the DRP, the analysis here might be different. But this court's inquiry is focused on whether there is an objective manifestation of intent by Bickford to enter into an agreement with (and invite acceptance by) Hergenreder, and we are not convinced that there is any such manifestation made by Bickford in the record in this case. *See id.*

*Id.* at 418.

d.   Insufficient Consideration

Defendants' argument that Ms. Brent entered into one or more so-called arbitration agreement(s) also fail(s) due to lack of consideration.  As the aforesaid Clause # 2 makes clear, the arbitration language expressly states that it is made "a condition of Priority 1 A.G. employment and continued employment." Doc. 6-2 at p. 6.  But, as this Court has held, "for arbitration agreements between employers and employees, 'employment or continued employment of [the employee] does not act as consideration in return for [the employee's] promise to arbitrate.'" *Raglani*, 939 F. Supp. 2d at 522 (citing *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 666 (Md. 2003)).

To be sure, the *Raglani* opinion was also based, at least in part, on the fact the agreement in question, in that case, did not mutually require both parties to arbitrate their disputes against one another – rather, the employee was the only one required to do so. 939 F. Supp. 2d at 522  Based at least on the documents which the Defendants have produced to date in their Exhibit B, it would appear that the so-called obligation to arbitrate may mutually apply to both parties.[11]  But, this issue ties into the unilateral modification issue discussed in Section V(b), as well as the contractual disclaimer issue discussed in Section V(c), in that we will not completely know whether these obligations are truly mutual or not, until we have the complete set of relevant documents to review. Based at least on the documents which we have so far, there are is at least one minor example of non-mutuality in the so-called arbitration agreement language, in that the employee purportedly consents to "having [sic, presumably meant to state "being subject to"] personal jurisdiction in the State of Maryland", while the Defendants do not similarly agree. Doc. 6-2 at p. 5.[12]

---

[11] But, note that Clause # 1 indicates that the Defendants see the so-called arbitration agreement(s) as "provid[ing] employees [i.e., not the Defendants] with another open and unbiased means of resolving a disagreement or controversy…". Doc. 6-2 at P. 5.

[12] It is also noteworthy that both Clause # 1 and Clause # 2 to Defendants' Exhibit B provide that "[t]he losing party agrees to pay any attorneys' fees or costs incurred by the prevailing party, as part

**V.   Documents and Information Pertinent to the Defendants' Motion Which the Defendants Failed to Produce or Establish**

The above issues are enough, on their own, to demonstrate that Ms. Brent did not enter into an agreement with the Defendants to arbitrate employment-related disputes.  However, even if the above issues did not exist, there are other potential issues to consider, including the following:

a.   Issues Regarding E-Signature

As noted above, the Defendants have not established that Ms. Brent signed, whether electronically or otherwise, several documents which the Defendants claim she reviewed and signed – particularly the document(s) contained in Exhibit B to Defendants' Motion and Defendants' Initial Reply.  Resolution of this material disputed issue of fact will require discovery into several issues, including the following, among potential others:

1)   Information regarding the reliability of the computer(s) used by Defendants as part of their e-signature software program, both at present and on March 19, 2012, to verify that no data was erroneously deleted, altered, added to, or associated with what Defendants allege was Ms. Brent's unique user ID;

2)   The identity of Defendants' e-signature software program on March 19, 2012, so that we can determine if the program was properly configured to correctly record the intended inputs;

---

of the judgment rendered." Doc. 6-2 at p. 5.  On the one hand, as it pertains to Ms. Brent's claims against the Defendants for employment discrimination and retaliation, the underlying statutes do provide that, if Ms. Brent prevails, she is entitled to an award of reasonable attorneys' fees and (not "or") costs.  But, as this language of Defendants' Exhibit B purports to pertain to the possibility that Ms. Brent would have to pay the Defendants' attorneys fees or costs if the Defendants were to prevail in this matter – such a result is clearly unlawful.  As was long ago established by the Supreme Court in *Christianburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), absent Ms. Brent bringing a frivolous claim against the Defendants, the above clauses, as applied to Ms. Brent, are unenforceable.

3) The identity of Defendants' current e-signature software program so that we can determine if the original software program was properly preserved for inspection for possible defects which could contaminate the intended inputs;

4) The procedure(s) used by Defendants at present and on March 19, 2012 for recording data in the alleged "E-signature Log" (the "Log") allegedly maintained by Defendants;

5) The safeguards, if any, possessed by Defendants' e-signature software and associated computer hardware to ensure accuracy of information recorded and to identify and correct errors both at present and on March 19, 2012,;

6) The steps taken by Defendants to maintain the e-signature software and associated computer hardware since March 19, 2012;

7) Evidence that the e-signature software and associated computer hardware was in working order at the time it allegedly recorded Ms. Brent's e-signature;

8) The manner in which the data contained in the Log has been stored at all times since March 19, 2012;

9) If the data shown in the Log is contained in a database, how that database was queried by Defendants to produce the Log provided by Defendants;

10) What, if any, other data is or, since March 19, 2012, has been stored by the Log and the database from which the Log was created;

11) How the physical version of the Log provided by Defendants was prepared and created;

12) Any procedures governing access to the data which was used to create the Log between March of 2012 and the present day;

13) Access or audit records which identify each access of, and change made to, the data stored in the database or Log between March of 2012 and the present day;

14) Information regarding whether the computer used to produce the Log was in proper working order when it produced the Log;

15) An explanation of the categories of data contained in the Log.  This explanation should address the fact that, while Defendants maintain Ms. Brent accessed and electronically signed six documents, the Log contains only one "viewed_date" one "signed_date";

16) How access to the database and e-signature program is administratively controlled, which individual(s) are authorized to access the database, which individuals have the power to access the database, which individual(s) are permitted to access user data (including passwords), which individuals have the power to access user data (including passwords), which individuals can view, change, or reset user passwords, and which individual(s) have root or administrative rights to the machine(s) on which the Log is maintained, as well as all policies and procedures related to these matters;

17) How changes in the database are logged or recorded;

18) A description of the audit procedures used by Defendants to ensure the integrity of the database;

19) A description of any changes made to any records related to Ms. Brent in the database since its creation; and

20) An unredacted version of the Log.

Resolution of some of the items described above may require a forensic examination of portions of the Defendants' information technology systems or access to the uncompiled source code of the e-signature program(s) used by the Defendants during March of 2012.  It is worth noting that Ms. Delach disclosed nothing in her affidavit, Doc. 15-1 at pp. 1 to 5, which would qualify her to resolve the many technical questions which are central to establishing that Ms. Brent did not sign the documents in question.

Further, under the Maryland Uniform Electronic Transactions Act, Md. Commercial Law Code Ann. § 21-101 *et seq.*, in order for an electronic signature to be valid, the parties must have agreed to conduct the transaction in question by electronic means – a provision which cannot be varied by agreement. *Id.* at § 21-104.  The Defendants have not established that there was such consent.

      b.  <u>Ability of Employer to Unilaterally Modify</u>

Many employee handbooks contain language to the effect that the employer can unilaterally modify any of the handbook's provisions at any time.  Employers typically add such language to address the concern that the provisions of the handbook may otherwise be found to be contractually binding on the employer.  From Exhibit B to the Defendants' Motion to Dismiss (Doc. 6-2 at pp. 5-6), the second page of which may not even be a part of the Handbook, it is not clear whether the Handbook contains such language.  But, if it does, courts have held that such language renders any purportedly binding language in such handbooks, including so-called arbitration agreements, as illusory, and therefore unenforceable.  *See, e.g., Hooters of Am.*, 173 F.3d at 939 (holding that agreements to arbitrate are invalid where they allow the employer to unilaterally change the rules); *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 662, 669 (Md. 2003) (where a party reserves the right to alter, amend, modify or revoke an arbitration agreement, the party makes an illusory promise and that where an illusory promise is involved, the arbitration agreement is unenforceable for lack of consideration).  Similarly, as the Fifth Circuit recently held:

> As it relates specifically to arbitration agreements, the '[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement.' *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010). Where one party has the unrestrained unilateral authority to terminate its obligation to arbitrate, however, the agreement understandably is illusory. See *id.* at 567 ('An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether.').

*Lizalde v. Vista Quality Markets*, 746 F.3d 222, 225-26 (5th Cir. 2014).

c.   Contractual Disclaimer

In a similar vein, it is not at all uncommon for employee handbooks to contain language claiming that the handbook is not a contract, and that its provisions are not binding on the employer.  Once again, from the aforesaid Defendants' Exhibit B, it is not clear whether the Handbook contains such language.  But, if it does, similar to the unilateral modification clauses discussed above, courts have held that employers cannot "have their cake and eat it too" – that is, they cannot claim that only a part of their handbook (e.g., an arbitration provision) is binding, while the remainder of the handbook is not. *See, e.g.*, *Beasley v. Brookwood Med. Ctr.*, 712 So. 2d 338, 340-41 (Ala. 1998) (instructing the lower court to vacate its order to compel arbitration pursuant to an arbitration agreement contained in an employee handbook where the handbook contained a disclaimer indicating that "no written statement or agreement in this handbook is binding" and where the agreement to arbitrate was contained in the handbook, not in the employee acknowledgement form); *Stewart v. Fairlane Mental Health Ctr.*, 571 N.W. 2d 542 (Mich. App. 1997) (holding that an arbitration provision in a handbook was unenforceable where it explicitly stated it was neither an employment agreement nor a contract of employment).

## VI. **Rule 56(d) Statement**

As noted in other sections of this memorandum, additional documentation and information is needed in order for Ms. Brent to address, and for this Court to consider, all of the issues regarding the disputed issues in this matter as to whether the parties agreed to arbitrate employment-related disputes.  Accordingly, pursuant to Fed. R. Civ. P. 56(d), Ms. Brent has provided in a declaration, attached hereto as **Exhibit 3**, setting forth the relevant facts on this subject.

## VII.     Request for Hearing

Ms. Brent, through her undersigned counsel, hereby joins the Defendants' request (see Doc.

6-3 at p. 1), pursuant to Local Rule 105(6), that a hearing be held in connection with the

Defendants' Motion, and Ms. Brent's Opposition thereto.

## VIII.    Conclusion

WHEREFORE, Ms. Brent respectfully prays that the Defendants' Motion be denied, and

that the accompanying Proposed Order be entered.


Date: November 11, 2014


Respectfully submitted,

_____/S/_____
Robert B. Fitzpatrick, Esq.
ROBERT B. FITZPATRICK, PLLC
1825 Connecticut Avenue, N.W., Suite 640
Washington, D.C. 20009-5728
(202) 588-5300 (phone)
(202) 588-5023 (fax)
fitzpatrick.law@verizon.net (email)

_____/S/_____
Ryan Paul Chapline, Esq.
ROBERT B. FITZPATRICK, PLLC
1825 Connecticut Avenue, N.W., Suite 640
Washington, D.C. 20009-5728
(202) 588-5300 (phone)
(202) 588-5023 (fax)
fitzpatrick.law@verizon.net (email)

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Debra J. Brent, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.      8:14-cv-01705-PWG |
| v. ) | |
| ) | |
| Priority 1 Automotive Group, Inc. *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REQUEST FOR EVIDENTIARY HEARING**

In connection with the accompanying Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss and Compel Arbitration, Plaintiff, Ms. Debra J. Brent, through her undersigned counsel, hereby respectfully requests that this Court order the parties to meet and confer, in an effort to agree upon the discovery which will be necessary for the Court to be able to rule upon the Defendants' Motion to Dismiss and Compel Arbitration in this matter.  After said discovery is completed, Ms. Brent further respectfully requests that an evidentiary hearing be held.

Date: November 11, 2014


Respectfully submitted,

_____/S/_____

Robert B. Fitzpatrick, Esq.
ROBERT B. FITZPATRICK, PLLC
1825 Connecticut Avenue, N.W., Suite 640
Washington, D.C. 20009-5728
(202) 588-5300 (phone)
(202) 588-5023 (fax)
fitzpatrick.law@verizon.net (email)

_____/S/_____

Ryan Paul Chapline, Esq.
ROBERT B. FITZPATRICK, PLLC
1825 Connecticut Avenue, N.W., Suite 640
Washington, D.C. 20009-5728

(202) 588-5300 (phone)
(202) 588-5023 (fax)
fitzpatrick.law@verizon.net (email)

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| Debra J. Brent, | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.     8:14-cv-01705-PWG** |
| **v.** | ) | |
| | ) | |
| Priority 1 Automotive Group, Inc. *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## [PROPOSED] ORDER

**UPON CONSIDERATION** of Defendants' Motion to Dismiss and Compel Arbitration,

Plaintiff's Opposition thereto, and the Parties' subsequent filings regarding said motion, it is this

_____ day of _____, 2014, hereby:

**ORDERED** that the motion is **DENIED**.

**SO ORDERED**.

_____
The Honorable Paul W. Grimm
District Judge

COPIES TO:
Counsel of Record
*Via CM/ECF*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2014, a copy of the foregoing Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss and Compel Arbitration, the accompanying exhibits, the accompanying request for an evidentiary hearing, and the accompanying Proposed Order, were served via the Court's electronic filing (CM/ECF) system upon:

Steven R. Freeman, Esq.
Freeman, Wolfe & Greenbaum, P.A.
409 Washington Ave., Suite 300
Towson, Maryland 21204
(410) 321-8400 (phone)
(410) 321-8407 (fax)
srf@fwglaw.com (email)

*Attorney for Defendants*

___/S/_____

Robert B. Fitzpatrick, Esq.
ROBERT B. FITZPATRICK, PLLC
1825 Connecticut Avenue, N.W., Suite 640
Washington, D.C. 20009-5728
(202) 588-5300 (phone)
(202) 588-5023 (fax)
fitzpatrick.law@verizon.net (email)

*Attorney for Plaintiff*