## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DEBRA J. BRENT,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No.: 8:14-cv-01705-PWG** |
| **PRIORITY 1 AUTOMOTIVE GROUP, INC.** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## DEFENDANT'S RESPONSE IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, Priority 1 Automotive Group, Inc. ("Priority 1" or "Defendant"), by and through its attorneys, Steven R. Freeman and Freeman Rauch, LLC, hereby submits this Response in Opposition to Plaintiff Debra J. Brent's ("Ms. Brent" or "Plaintiff") Motion for Summary Judgment ("Plaintiff's Motion") and, in support thereof, states as follows:

## ARGUMENT

### I.     Standard of Review

This Court has previously noted that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D.Md.2013) (citing *Shaffer v. ACS Gov't Servs., Inc.,* 321 F.Supp.2d 682, 683 (D.Md.2004)). Where the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment. *Id.* at 589; *Rose v. New Day Fin., LLC*, 816 F.Supp.2d 245, 251 (D.Md.2011). Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir.1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson,* 477 U.S. at 249–50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also In re Apex Express Corp.,* 190 F.3d 624, 633 (4th Cir.1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md.2001) (citations omitted).

II.     **Both Federal and Maryland Law Strongly Favor Enforcement of Arbitration Agreements**

"In Maryland, there is a strong legislative policy favoring enforcement of arbitration agreements." *Louis Fireison & Associates, P.A. v. Alkire*, 195 Md. App. 461, 471, 6 A.3d 945, 951 (2010) (internal quotation marks and citations omitted). *See also Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 146, 835 A.2d 656, 660 (2003) (recognizing that the Maryland Uniform Arbitration Act ("MUAA"), Md. Code Ann., Cts. & Jud. Proc. § 3-201 *et seq.*, "expresses the legislative policy favoring enforcement of agreements to arbitrate") (internal quotation marks and citations omitted). *Cf. Letke Sec. Contractors, Inc. v. United States Sur. Co.*, 191 Md. App. 462, 470-71, 991 A.2d 1306, 1311 (2010) ("[MUAA] constitutes a radical departure from the common law. Executory agreements to arbitrate are to be deemed 'valid, irrevocable and enforceable,' and suits to compel arbitration or to stay the action of a court pending arbitration may now be brought. The prime purpose of these provisions is to discourage litigation and to foster voluntary resolution of disputes in a forum created, controlled and administered according to the parties' agreement to arbitrate. Thus, by its enactment, the General Assembly established a policy in favor of the settlement of disputes through the arbitration process and ended the ambivalence of courts under the common law. Not only suits to enforce an arbitrator's award, but also suits to compel arbitration and suits to stay court action pending arbitration, are now to be viewed as 'favored' actions." (quoting *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, 21 Md.App. 307, 319-20, 320 A.2d 558, 565 (1974), *vacated on other grounds*, 274 Md. 307, 334 A.2d 526 (1975))).

Likewise, the Supreme Court has repeatedly reaffirmed that federal law strongly favors the arbitration of disputes and the enforcement of arbitration agreements. *See, e.g., Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89, 121 S. Ct. 513, 521, 148 L. Ed. 2d 373 (2000)

(recognizing that the purpose of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, is 'to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts.' " (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749, 179 L. Ed. 2d 742 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as embodying a national policy favoring arbitration[.]") (internal quotation marks and citations omitted).  As the Supreme Court noted in *Concepcion*, "[t]he overarching purpose of the FAA, evident in the text of [9 U.S.C.] §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  131 S. Ct. at 1748, 179 L. Ed. 2d 742.  Indeed, the FAA specifically provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA creates "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), premised upon a determination by Congress that arbitration includes "efficient, streamlined procedures" that "reduc[e] the cost and increas[e] the speed of dispute resolution." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749, 179 L. Ed. 2d 742 (2011). Thus, when there is a written agreement to arbitrate, that agreement must be enforced unless there is a legal impediment to its enforcement that is not preempted by the FAA. *Id.*  If a party refuses to participate in arbitration, the FAA requires the Court to order the parties "to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

### III.        The FAA Applies to the Arbitration Agreement

The Supreme Court has expressly rejected the argument that arbitration agreements in all employment contracts are beyond the FAA's reach, and instead has held that all "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 761, 151 L. Ed. 2d 755 (2002) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)). *See also Adams*, 532 U.S. at 123, 121 S. Ct. at 1313, 149 L. Ed. 2d 234 ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law; as we noted in *Gilmer*, " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " (quoting *Gilmer*, 500 U.S. at 26, 111 S. Ct. at 1652)); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 369 (4th Cir.2012) (" '[A] contract evidencing a transaction involving commerce' [under § 2 of the FAA] includes an employment contract." (citing *Adams*, 532 U.S. at 113, 121 S.Ct. 1302, 149 L.Ed.2d 234). *Cf. Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 505 (4th Cir.2002) (recognizing that § 1 of the FAA, exempting from the FAA's reach disputes arising out of "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," represents a narrowly targeted exception to a well-established, broad preference in favor of arbitration and, thus, must be narrowly construed); *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir.1997) (limiting § 1's coverage to "workers actually involved in the interstate transportation of goods"). The FAA has been repeatedly applied to employment contracts in this Circuit. *See, e.g., Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87

(4th Cir.2005); *Murray v. United Food & Commercial Workers Int'l Union, Local 400*, 289 F.3d 297, 301 (4th Cir.2002); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 936–37 (4th Cir.1999). Moreover, in *Murray*, the Fourth Circuit observed that "[i]t is settled that the provisions of the FAA, and its policy favoring the resolution of disputes through arbitration, apply to employment agreements to arbitrate discrimination claims brought pursuant to federal statutes, *including Title VII of the Civil Rights Act*." 289 F.3d at 301 (emphasis added). The Arbitration Agreement between Plaintiff and Defendant is plainly within the scope of the FAA. As Plaintiff was not a "transportation worker" exempt from the FAA, the FAA applies to the Arbitration Agreement, and Plaintiff can be required to arbitrate the discrimination claims she has brought pursuant to Title VII of the Civil Rights Act.

**IV.      A genuine dispute of material fact exists as to whether Ms. Brent agreed to conduct the subject transaction by electronic means, thereby precluding summary judgment for Ms. Brent.**

Ms. Brent suggests to this Court that summary judgment is appropriate because no genuine dispute of material fact exists as to whether Ms. Brent agreed to conduct the subject transaction by electronic means as required under the Maryland Uniform Electronic Transaction Act, Md. Commercial Law Code Ann §21-101 *et seq*. ("MUETA"). However, as discussed below, sufficient facts exist relative to the circumstances surrounding Ms. Brent's electronic signature, which, when considered in the light most favorable to Priority 1, indicate a genuine dispute of material fact precluding summary judgment.

As a condition of employment with Priority 1, employees hired by Priority 1 during the timeframe between March 2012 and July 2012, were required to execute a number of employment-related documents, as well as electronically sign an acknowledgement of each employee's receipt of Priority 1's standard employee information handbook ("Company Policy

and Employee Handbook") and agreement to a dispute resolution via arbitration policy ("Dispute Resolution via Arbitration Policy" or "Arbitration Agreement").  *See* Exhibit F, JR at Appx. Bates No. 104. To that end, each employee was assigned a unique subscriber identification number by Priority 1 and required to log into a secure web portal utilizing that employee's identification number for the purposes, *inter alia*, of: (1) viewing the Company Policy and Employee Handbook; (2) electronically signing an acknowledgment of that employee's receipt of Company Policy and Employee Handbook; and (3) electronically signing an acknowledgement of that employee's receipt of and agreement to Priority 1's Dispute Resolution via Arbitration Policy. *Id.*

Upon logging into said web portal with their unique subscriber identification number, each employee was presented with a webpage containing the following verbiage: "**E-Signature Requirement.**  Your E-Signature is Required.  Please click the E-Signature icon to proceed.  By completing the e-signature you are agreeing to Receipt of the Priority 1 Automotive Group Company Policy and Employee Handbook; Dispute Resolution via Arbitration Policy; Consent to Obtain Consumer Report Disclosure; Employee Acknowledgement and Agreement to Comply with Information Security Program; Acknowledgement of policies pertaining to Motor Vehicle Operating; and, Acknowledgement of the Internet Usage Policy."   Below this verbiage was displayed the following: "**Electronic Signature** [—] YOUR ELECTRONIC SIGNATURE DOCUMENTS [—] Please click on the document link(s) below to open the document(s) you are required to electronically sign.  After you have opened the document, you can electronically sign it by clicking the e-sign button."  *See* Exhibit F, JR at Appx. Bates No. 104-105. Immediately below this verbiage was: (1) a web link to a PDF document which contained, *inter alia*, the Company Policy and Employee Handbook and stand alone Dispute Resolution via Arbitration

Policy), above which was displayed the verbiage, "1. Open the document"; and (2) an "E-Sign" button to the right of the aforementioned web link, above which was displayed the verbiage, "2. Click to electronically sign." *See* Exhibit F, JR at Appx. Bates No. 105. In order to acknowledge receipt of the Company Policy and Employee Handbook and in order to acknowledge receipt of and agreement to the distinct Dispute Resolution via Arbitration Policy, employees had to first click on the aforementioned document link in order to view the Company Policy and Employee Handbook and Dispute Resolution via Arbitration Policy, and then click the aforementioned "E-Sign" button. *Id.* Priority 1 maintained a contemporaneous record of each time an employee logged into this web portal utilizing that employee's unique subscriber identification number, viewed the Company Policy and Employee Handbook and Dispute Resolution via Arbitration Policy, and electronically signed: (1) an acknowledgment of that employee's receipt of the Company Policy and Employee Handbook and (2) an acknowledgement of that employee's receipt of and agreement to Defendant's Dispute Resolution via Arbitration Policy (hereinafter, "E-Signature Log"). *Id.*

Under MUETA § 21-104, electronic signatures may be used in a transaction provided that the parties to any such transaction have "agreed to conduct transactions by electronic means." MUETA § 21-104(b)(1). MUETA, in turn, enumerates the methods by which the parties to a transaction may agree to conduct that transaction electronically:

> (b)(1) This title applies only to transactions between parties, each of which has agreed to conduct transactions by electronic means.
>
> (2) Whether the parties have agreed to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct.
>
> (3) Except for a separate and optional agreement the primary purpose of which is to authorize a transaction to be conducted by electronic means, a provision to conduct a transaction

> electronically may not be contained in a standard form contract
> unless that provision is conspicuously displayed and separately
> consented to.
>
> (4) An agreement to conduct a transaction electronically may not
> be inferred solely from the fact that a party has used electronic
> means to pay an account or register a purchase warranty.

MUETA § 21-104(b)(1)-(4). Here, Priority 1 concedes that Ms. Brent did not execute a separate

and distinct agreement whereby Ms. Brent agreed to conduct the subject transaction by way of

electronic means. However, in accordance with MUETA § 21-104(b)(2), the context and

circumstances surrounding the transaction outlined above creates a genuine dispute of material

fact whether Priority 1 and Ms. Brent agreed to conduct the subject transaction through

electronic means.

In 1999 the Uniform Electronic Transactions Act (UETA) was proposed by the National

Conference of Commissioners on Uniform State Laws, and since then, forty-eight States,

including Maryland, have adopted it or versions of it. MUETA § 21-104(b)(2) is identical to the

provision contained in Section 5(b) of UTEA. An official comment to UETA sheds light on the

intent of Section 5(b) and the application of same:

> 3. If this Act is to serve to facilitate electronic transactions, it must
> be applicable under circumstances not rising to a full fledged
> contract to use electronics. While absolute certainty can be
> accomplished by obtaining an explicit contract before relying on
> electronic transactions, such an explicit contract should not be
> necessary before one may feel safe in conducting transactions
> electronically. Indeed, such a requirement would itself be an
> unreasonable barrier to electronic commerce, at odds with the
> fundamental purpose of this Act. Accordingly, the requisite
> agreement, express or implied, must be determined from all
> available circumstances and evidence.
>
> 4. Subsection (b) provides that the Act applies to transactions in
> which the parties have agreed to conduct the transaction
> electronically. In this context it is essential that the parties' actions
> and words be broadly construed in determining whether the

> requisite agreement exists. Accordingly, the Act expressly
> provides that the party's agreement is to be found from all
> circumstances, including the parties' conduct. The critical element
> is the intent of the party to conduct a transaction electronically.
> Once that intent is established, this Act applies.

UETA § 5 cmt. 3 and 4. The foregoing comment outlines the purpose of UTEA, which is to facilitate, not inhibit, the use of electronic transactions in commerce. Accordingly, in determining whether a sufficient agreement exists under Section 5(b), the parties' conduct is to be "broadly construed."

In *Cortez v. Ross Dress for Less, Inc.*, the United States District Court for the Central Division of California interpreted California's version of the UETA, which has a provision identical to MUETA §21-104(b)(2). *See Cortez v. Ross Dress for Less, Inc.*, 2014 WL 1401869 (2014); *see also* Cal. Civ. Code § 1633.5 ("Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct."). In *Cortez*, evidence was presented that two employees clicked "I agree" after being presented with the text of an arbitration agreement through an online program. *Cortez* 2014 WL 1401869 at *1. Based on those facts, the court found that there was evidence of the parties' conduct and surrounding circumstances sufficient to satisfy the requirements of Cal. Civ. Code § 1633.5. *Id.* at *2. In doing so, the court found that "[t]he evidence shows that the software through which employees were asked to sign the [Dispute Resolution Agreement] made explicitly clear, un understandable language, both before and after presenting the text of the [Dispute Resolution Agreement], that by clicking "I agree," the employees were entering into a binding agreement that disputes arising from their employment would be resolved by arbitration…" *Id.*

Here, Ms. Brent electronically signed an acknowledgement of her receipt of and agreement to Priority 1's Dispute Resolution via Arbitration Policy (Exhibit D, JR at Appx. Bates No. 101) in accordance with the procedure detailed herein, utilizing the unique subscriber identification number (Subscriber ID 3480349) which was assigned exclusively to Ms. Brent by Priority 1. A true and correct redacted copy of the E-Signature Log maintained by Priority 1 for employees of the company hired during the timeframe between March 2012 and July 2012 is attached to Joint Record as Exhibit F at Appx. Bates No. 111-115. The E-Signature Log evidences that, on March 19, 2012, Ms. Brent logged into the aforesaid web portal utilizing the subscriber ID number which was assigned to her, viewed, *inter alia*, the Dispute Resolution via Arbitration Policy and electronically signed an acknowledgment of her receipt thereof and agreement thereto. *Id* at Appx. Bates No. 111. Accordingly the context and surrounding circumstances of this transaction establishes that Ms. Brent parties did, in fact, review and approve, *inter alia*, Priority 1's Dispute Resolution via Arbitration Policy.

In doing so, Ms. Brent was advised, on more than one occasion while navigating the web portal that she was agreeing to proceed with the subject transaction by way of electronic means. More specifically, before Ms. Brent could even view the Dispute Resolution via Arbitration Policy, along with the other employment related documents, Ms. Brent was presented with the following text: "**E-Signature Requirement.**  Your E-Signature is Required.  Please click the E-Signature icon to proceed.  By completing the e-signature you are agreeing to Receipt of the Priority 1 Automotive Group Company Policy and Employee Handbook; Dispute Resolution via Arbitration Policy; Consent to Obtain Consumer Report Disclosure; Employee Acknowledgement and Agreement to Comply with Information Security Program; Acknowledgement of policies pertaining to Motor Vehicle Operating; and, Acknowledgement of

the Internet Usage Policy." *See* <u>Exhibit F</u>, JR at Appx. Bates No. 104-105. Additionally, below this verbiage was displayed the following: "**Electronic Signature** [—] YOUR ELECTRONIC SIGNATURE DOCUMENTS [—] Please click on the document link(s) below to open the document(s) you are required to electronically sign.  After you have opened the document, you can electronically sign it by clicking the e-sign button." *Id.*

In an attempt to circumvent the foregoing factual circumstances relative to the context and circumstances surrounding Ms. Brent's execution of the Arbitration Agreement, Ms. Brent relies on language contained in a Memorandum from Louis Cohen ("Mr. Cohen). More specifically, Ms. Brent cites to the following language of the Memorandum to support the proposition that the parties to the subject transaction expressed an intention to conduct the subject transaction by way of an original signature: "THERE ARE (2) COPIES EACH OF THREE (3) ACKNOWLEDGEMENT FORMS IN THE BACK OF EACH BOOK. <u>ONE COPY OF EACH IS TO BE SIGNED BY YOU AND TURNED INTO [sic] YOUR MANAGER FOR FORWARDING TO THE OFFICE NO LATER THAN FRIDAY NOVEMBER 11, 2011.</u>" *See* <u>Exhibit A</u>, JR at Appx. Bates No. 1. First, the Memorandum is dated November 4, 2011, which pre-dates Ms. Brent's execution of the Arbitration Agreement by approximately four and a half months. Second, the Memorandum indicates that any such signed copy was required to be returned to a manage no later than November 11, 2011, which, again, predates Ms. Brent's execution of the Arbitration Agreement by approximately four and a half months. In addition to the foregoing chronological inconsistencies, the fact remains that Ms. Brent logged into the aforesaid web portal utilizing her unique subscriber ID number, viewed*, inter alia*, the Arbitration Agreement and electronically signed an acknowledgment of her receipt thereof and agreement thereto. <u>Exhibit F</u> at Appx. Bates No. 111. At worst, a genuine dispute of material fact

exists relative to the significance, or lack thereof, of Mr. Cohen's Memorandum as it relates to the context and circumstances surrounding Ms. Brent's execution of the Arbitration Agreement.

For all of the foregoing reasons, a genuine dispute of material fact exists as to whether Plaintiff agreed to conduct the subject transaction by electronic means, thereby precluding summary judgment for Plaintiff.

**V.      A genuine dispute of material fact exists as to whether there is a binding Arbitration Agreement between the parties, thereby precluding summary judgment for Ms. Brent.**

Ms. Brent suggests to this Court that summary judgment is appropriate because the Company Policy and Employee Handbook, for various reasons, is not an enforceable agreement between Ms. Brent and Priority 1. However, the text presented to Ms. Brent by way of the web portal establishes that the Arbitration Agreement and Company Policy and Employee Handbook are separate and distinct documents. *See* <u>Exhibit F</u>, JR at Appx. Bates No. 104-105. As a result, the Arbitration Agreement does not suffer from the same purported contractual deficiencies as the Company Policy and Employee Handbook. As discussed below, the majority of Ms. Brent's challenges to the validity of the Arbitration Agreement are necessarily tied to this false pretense. Accordingly, a genuine dispute of material fact exists, thereby precluding summary judgment.

**1.      The Arbitration Agreement is a stand-alone, separate and distinct document from the Company Policy and Employee Handbook.**

The Arbitration Agreement and Company Policy and Employee Handbook are separate and distinct documents, irrespective of the fact that they were presented to Ms. Brent in one PDF document through the web portal on March 19, 2012.

As stated above, upon logging into the web portal with Ms. Brent's unique subscriber identification number, Ms. Brent was presented with a webpage containing the following verbiage: "**E-Signature Requirement.**   Your E-Signature is Required.   Please click the E-

Signature icon to proceed.  By completing the e-signature you are agreeing to Receipt of the Priority 1 Automotive Group Company Policy and Employee Handbook; Dispute Resolution via Arbitration Policy; Consent to Obtain Consumer Report Disclosure; Employee Acknowledgement and Agreement to Comply with Information Security Program; Acknowledgement of policies pertaining to Motor Vehicle Operating; and, Acknowledgement of the Internet Usage Policy." *See* <u>Exhibit F</u>, JR at Appx. Bates No. 104. Accordingly, Ms. Brent, through her E-Signature was: (1) agreeing to Receipt of the Priority 1 Automotive Group Company Policy and Employee Handbook; (2) agreeing to the Dispute Resolution via Arbitration Policy; (3) agreeing to Consent to Obtain Consumer Report Disclosure; (4) agreeing to the Employee Acknowledgement and Agreement to Comply with Information Security Program; (5) agreeing to Acknowledgement of policies pertaining to Motor Vehicle Operating; *and* (6) agreeing to Acknowledgement of the Internet Usage Policy. Thus by the very language of the "E-Signature Requirement" disclosure, the Dispute Resolution via Arbitration Policy was being treated as separate and apart from the  Company Policy and Employee Handbook. The six (6) documents were expressly delineated when presented to Ms. Brent. The fact that the documents were presented to Ms. Brent by way of one single PDF does not equate to the fact, as Ms. Brent suggests, that all of the documents contained therein are contained within and are part of the Company Policy and Employee Handbook.

Accordingly, a genuine dispute of material fact exists as to whether or not the Arbitration Agreement and Company Policy and Employee Handbook are separate and distinct documents.

**2.      The Arbitration Agreement is supported by adequate consideration.**

Based on the flawed assumption that the Arbitration Agreement is a part of and contained within the Company Policy and Employee Handbook, Ms. Brent contends that Priority 1's

promise to arbitrate is illusory, and, as a result, the Arbitration Agreement lacks adequate consideration. In support thereof, Ms. Brent relies on a provision contained in the Company Policy and Employee Handbook, which states that: "[t]he Company reserves the right to make and enforce new policies or procedures, and to enforce, change, abolish or modify existing policies and benefits at the Company may considered necessary with or without notice." *See* <u>Exhibit B</u>, JR at Appx. Bates No. 7. However, as stated above, the Arbitration Agreement upon which Priority 1 relies is separate and distinct from the Company Policy and Employee Handbook and, as a result, does not contain any such provision. *See* <u>Exhibit D</u>, JR at Appx. Bates No. 101.

Under Maryland law, an agreement to arbitrate disputes is enforceable if it is a valid contract. *Hill,* 412 F.3d at 543; *see also Cheek*, 378 Md. at 147, 835 A.2d at 661. Moreover, "an arbitration clause is a severable contract which is enforceable independently from the contract as a whole." *Holmes v. Coverall N. Am., Inc.,* 336 Md. 534, 545, 649 A.2d 365, 370 (1994); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 301, 130 S.Ct. 2847, 2858, 177 L.Ed.2d 567 (2010) (Under "the FAA ... courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself."). To determine the validity of the arbitration agreement, Maryland courts look at the four corners of an arbitration provision. *See Cheek,* 378 Md. at 152-54, 835 A.2d at 664–65; *see also Hill,* 412 F.3d at 543-44. As with any contract, the arbitration provision must be supported by adequate consideration in order to be valid and enforceable. *See Cheek,* 378 Md. at 147, 835 A.2d at 661. In Maryland, consideration may be established by showing a benefit to the promisor or a detriment to the promisee. *Cheek*, 378 Md. at 148, 835 A.2d at 661. In particular, the

forbearance to exercise a right or pursue a claim can constitute sufficient consideration to support an agreement.  *Id.*

Looking to the four corners of the Arbitration Agreement in the case *sub judice* as *Cheek* and *Hill* instruct, only one conclusion is tenable — the Arbitration Agreement is valid, binding and enforceable.  The Arbitration Agreement clearly imposes mutual obligations on Ms. Brent and Priority 1. It requires, *inter alia*, "*any and all* differences or disputes between [Ms. Brent] and [Priority 1] *shall be settled by the parties* or [*sic*] through binding arbitration[,]" and that "[t]he arbitrator's finding, decision and award *shall be final, binding and conclusive on both parties*" *See* <u>Exhibit F</u>, JR at Appx. Bates No. 104-105 (emphasis added).  "[M]utual promises to arbitrate act as an independently enforceable contract [, i.e.,] each party has promised to arbitrate disputes arising from an underlying contract, and each promise provides consideration for the other."*Cheek,* 378 Md. at 153, 835 A.2d at 665 (internal quotations and citations omitted); *see also O'Neil v. Hilton Head Hosp.,* 115 F.3d 272, 275 (4th Cir.1997) ("A mutual promise to arbitrate constitutes sufficient consideration for [an] arbitration agreement."). Because Ms. Brent and Priority 1 mutually agreed to be bound by this arbitration provision, the Arbitration Agreement was supported by adequate consideration, and is thus valid, binding and enforceable.

**3.    The stand-alone Arbitration Agreement is to be interpreted as a contract.**

Similarly, also based on the flawed assumption that the Arbitration Agreement is part of and contained within the Company Policy and Employee Handbook, Ms. Brent contends that the Arbitration Agreement expressly indicates that it is not to be interpreted as a contract between Priority 1 and Ms. Brent. In support thereof, Ms. Brent relies on a provision contained in the Company Policy and Employee Handbook, not the Arbitration Agreement, which states that: "[t]he policies contained in this Handbook do not create any contract of employment, nor do they

constitute the terms of an implied agreement with the Company[.]" *See* <u>Exhibit B</u>, JR at Appx. Bates No. 7. In addition, Ms. Brent further relies on a separate provision contained in a separate document entitled "Acknowledgment of Receipt" which states that:

> "[T]his **Company Policy and Employee Handbook** constitutes management guidelines only and is neither to be interpreted as a contract between **Priority 1 A.G., nor its dealerships** and me, nor does it constitute a guarantee that my employment will continue for any specified period of time or end only under certain circumstances. I understand that neither this Handbook nor any other communication by a management representative is in any way intended to create an express or implied contract of employment."

*See* <u>Exhibit C</u>, JR at Appx. Bates No. 100.

However, as stated above, the Arbitration Agreement upon which Priority 1 relies is separate and distinct from the Company Policy and Employee Handbook. *See* Section V.1., *infra*. Given the fact that the Arbitration Agreement does not contain any such provision disclaiming contractual intent, the Arbitration Agreement is to be construed as a binding contract between Priority 1 and Ms. Brent. *See* <u>Exhibit D</u>, JR at Appx. Bates No. 101.

**4.   The Arbitration Agreement's purported lack of certain terms is of no consequence.**

Ms. Brent suggests to this Court that summary judgment is appropriate because the Arbitration Agreement upon which Priority 1 relies lacks materials terms, namely, the identity of the arbitrator, the rules of arbitration and the scope of the disputes to be arbitrated. However, as discussed below, the Arbitration Agreement does define the scope of the disputes to be arbitrated and the failure to designate the arbitrator or the rules to be used is of no consequence.

First, the Arbitration Agreement, requires, *inter alia*, that "any and all differences or disputes between [Ms. Brent] and [Priority 1] shall be settled by the parties or [sic] through binding arbitration." *See* <u>Exhibit F</u>, JR at Appx. Bates No. 104-105. Thus, despite Ms. Brent's

contention to the contrary, the Arbitration Agreement does define the scope of any arbitrable dispute between Ms. Brent and Priority 1. Second, the FAA directs a court, upon application by either of the parties, to designate and appoint an arbitrator if the arbitration agreement fails to provide for the method of selecting an arbitrator:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C.A. § 5. *See CAE Indus. Ltd. v. Aerospace Holdings Co.*, 741 F. Supp. 388 (S.D.N.Y. 1989) (recognizing that although the arbitration agreement at issue did not explicitly provide for the method by which an arbitrator was to be appointed, the court was authorized to appoint the arbitrator under 9 U.S.C.A. § 5). *See also Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 642 F. Supp. 1155, 1157 (N.D. Ill. 1986) aff'd, 831 F.2d 709 (7th Cir. 1987) ("Even if the parties' prior dealings did not dictate who would arbitrate the dispute, this Court is authorized to designate and appoint an arbitrator upon either parties' application. . . . Section 5 grants this Court the authority to designate and appoint an arbitrator who shall act under the arbitration agreement with the same force and effect as if the arbitrator had been specifically named in the arbitration agreement."). Thus, based on the foregoing authorities, the subject Arbitration Agreement's omission of the method by which an arbitrator is to be appointed is non consequential as the FAA permits a court to "fill in the gap" as it relates to the appointment of an arbitrator and, consequently, the rules for the resulting arbitration.

## **CONCLUSION**

For all of the foregoing reasons, Defendant Priority 1 Automotive Group, Inc. respectfully requests that this Honorable Court enter an Order denying Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

/s/  Steven R. Freeman
Steven R. Freeman, Bar No. 02927
Freeman Rauch, LLC
409 Washington Avenue, Suite 200
Towson, Maryland 21204
Telephone: (410) 842-8400
Facsimile: (410) 825-1316
E-mail: srf@freemanrauch.com
*Attorneys for Defendant*
*Priority 1 Automotive Group, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 15th day of January, 2016, a copy of the foregoing Response in Opposition to Plaintiff's Motion for Summary Judgment and proposed Order were served on all counsel of record via the Court's electronic filing (CM/ECF) system.

/s/  Steven R. Freeman
Steven R. Freeman