IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **DEBRA J. BRENT,** | \* |
| **Plaintiff,** | \* |
| v. | \*   Case No.: PWG-14-1705 |
| **PRIORITY 1 AUTOMOTIVE GROUP, BMW OF ROCKVILLE,** | \* |
| | \* |
| **Defendant.** | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Debra Brent originally filed, without counsel, a one-count complaint for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, claiming that Defendant Priority 1 Auto Group, BMW of Rockville ("Priority 1") terminated her after she participated in an investigation of a co-worker's complaint of discrimination. ECF No. 1. Now she seeks leave to add Rockville Cars, LLC as a defendant; to restate her Title VII retaliation claim; to add retaliation claims under 42 U.S.C. § 1981 and the Montgomery County Human Rights Act, Montgomery Cnty. Code § 27-1 *et seq.*; and to demand a jury trial.[1] Pl.'s Mot., ECF No. 77. I have reviewed Brent's letter request to file a motion to amend, ECF No. 73; Motion

---

[1] In her letter describing her proposed motion to amend, Brent asserted that she would be adding Priority 1's owner, Lou Cohen, as a defendant, and adding claims of discrimination and tortious interference against Cohen and Priority 1. *See* Pl.'s Ltr. Br. 2–4. Her motion to amend, however, does not identify Cohen as a defendant or discuss discrimination or tortious interference claims, and Cohen is not listed on the caption of the proposed amended complaint, which does not include discrimination or tortious interference claims. *See* Pl.'s Mot.; Am. Compl. In a telephone conference on December 8, 2016, Plaintiff's counsel confirmed that Brent does not seek to add Cohen as a defendant. Therefore, insofar as Brent sought leave to add Cohen as a defendant and add discrimination and tortious interference claims, her request is denied as moot.

for Leave to File Amended Complaint, ECF No. 77; and the letter that Priority 1 filed in opposition, ECF No. 76.[2] Priority 1 does not oppose the addition of Rockville Cars, LLC as a defendant. And, although Priority 1 opposes the other amendments, the amended pleadings are neither futile nor prejudicial. They do not exceed the scope of Brent's Equal Employment Opportunity Commission ("EEOC") claim (which would render them unexhausted and subject to dismissal) or original Complaint (which could create unfair surprise). Accordingly, I will grant Brent's motion and accept the proposed amended complaint, ECF No. 77-1, as the operative complaint in this case.

Whether to grant a motion for leave to amend is within this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court only should deny leave to amend if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility." *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *see Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: '[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the

---

[2] Brent originally sought leave to amend in December 2014, ECF No. 26; the parties fully briefed the motion, ECF Nos. 26-1, 29-3, 33; and I denied the motion without prejudice to resubmission following the resolution of the arbitrability issue. ECF No. 39. After concluding that the arbitration agreement was unenforceable for lack of consideration, ECF No. 69, I permitted Brent to submit a letter explaining her proposed amendments and permitted Priority 1 to file a response letter. ECF No. 71. The parties filed their letters regarding amendment. Pl.'s Ltr. Br., ECF No. 73; Def.'s Ltr. Opp'n, ECF No. 76. Brent then filed a formal Motion for Leave to File First Amended Complaint, accompanied by her proposed amended complaint, ECF Nos. 77 & 77-1, to avoid a limitations issue on her 42 U.S.C. § 1981 claim. I accepted the motion and informed Priority 1 that it could stand on its letter briefing or oppose the motion in accordance with this Court's Local Rules, ECF No. 78; Priority 1 did not file anything further. The motion to amend is ripe, and a hearing is not necessary. *See* Loc. R. 105.2(a), 105.6.

requirements of the federal rules.'" *Patterson v. Med*, No. JFM-15-3303, 2016 WL 1718226, at *4 (D. Md. Apr. 28, 2016) (quoting *Katyle v. Perm Nat'l Gaming, Inc.* 637 F.3d 462, 471 (4th Cir. 2011)), *aff'd*, No. 16-6663, 2016 WL 5753089 (4th Cir. Oct. 4, 2016). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," and the plaintiff moves to amend, the Court should grant the motion so that the plaintiff has the "opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

With regard to Brent's proposal to restate her Title VII claim, Priority 1 argues that amendment would be futile because Brent failed to exhaust her administrative remedies for that claim. Def.'s Ltr. Opp'n 3–4. It is true that Brent's claims would be subject to dismissal, and therefore futile, if she failed to exhaust her administrative remedies, because "federal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013). To exhaust her administrative remedies, a plaintiff must file a timely administrative complaint pursuant to 42 U.S.C. § 2000e-5(e)(1). *Id.*; *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009); *Krpan v. Bd. of Educ. of Howard Cnty.*, No. ELH-12-2789, 2013 WL 4400475, at *5 (D. Md. Aug. 15, 2013). Significantly, a plaintiff only exhausts her administrative remedies as to "'those discrimination claims stated in the initial charge, those reasonably related to the original complaint, [ ] those developed by reasonable investigation of the original complaint,' and those contained in official amendments to the EEO complaint." *Van Durr v. Lew*, No. DKC-12-2137, 2014 WL 4187821, at *1 (D. Md. Aug. 22, 2014) (quoting *Jones*, 551 F.3d at 300); *see Addison v. Dep't of the Navy*, No. DKC-13-846, 2015 WL 1292745, at *4 (D. Md. Mar. 20, 2015) (same); *Krpan*, 2013 WL 4400475, at *5–6 (granting motion to dismiss count for discrimination based on national origin because plaintiff "did not include such a claim

in his complaint to the EEOC"); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2004) (affirming summary judgment on claims of color and sex discrimination, because EEOC charge only alleged race discrimination). This means that "so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her [administrative] charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'" *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012) (quoting *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000)). In establishing and applying this rule, the Fourth Circuit has "sought to strike a balance between providing notice to employers and the [agency] on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Id.*

According to Priority 1, Brent's amended claims are unexhausted because she alleged in her EEOC charge that she was retaliated against for participating in an investigation of a *co-worker*'s discrimination claims, whereas she now claims that Defendants retaliated against her for complaining about race and sex discrimination against *her*. Def.'s Ltr. Opp'n 3–4.[3] Relatedly, Priority 1 contends that amendment would be prejudicial because Brent's proposed amended complaint "relies entirely on facts that were not included in the Original Complaint," which "makes only one claim for Retaliation under Title VII based on her participation in a co-worker's EEOC investigation" and "the facts proposed to be added relate entirely to new allegations that Plaintiff herself was a victim of alleged racial and sexual discrimination." *Id.* at 5.

---

[3] As noted above in footnote 1, Priority's other futility argument – that Brent failed to exhaust her administrative remedies with regard to the substantive discrimination claims she proposed in her letter brief, Def.'s Ltr. Opp'n 4 – is moot, as Brent did not include substantive discrimination claims in her proposed amended complaint or address them in her motion to amend. Indeed, she did not exhaust her administrative remedies for a discrimination claim because the gravamen of her EEOC claim was retaliation, and a substantive discrimination claim would not be reasonably related to her retaliation claim. *See Bryant*, 288 F.3d at 132–33; *Krpan*, 2013 WL 4400475, at *5–6.

A careful review of the filings shows that this is not the case. Unlike in *Krpan*, 2013 WL 4400475, at *5–6, and *Bryant*, 288 F.3d at 132–33, Brent does not bring a different type of claim from her administrative claim; she continues to allege retaliation. Further, Brent's proposed amendments are "reasonably related to the original [EEOC] complaint" and could be "developed by reasonable investigation of the original complaint." *See Van Durr*, 2014 WL 4187821, at *1 (quoting *Jones*, 551 F.3d at 300). In fact, they appear to be a more-detailed clarification of her original Complaint and EEOC claim. In her Complaint, Brent presented the facts as follows:

> Defendants retaliated against Debra J. Brent (plaintiff) after her participation in a discrimination complaint investigation that was filed/made by another employee. Prior to the complaint the plaintiff had not received any criticism from the Defendants. (Also – see EEOC Complaint filed by plaintiff)[.]

Compl. 2–3. In her EEOC claim, she alleged:

> i. On March 01, 2012, I began my employment with [the] above named employer as a Client Advisor. On or about September 18, 2012, Mary Walker (white, female), Client Advisor identified me as a witness in her discrimination complaint to Internet Sales Manager Sanjeev [Sawhney][4] (Asian- East Indian, Male). On September 27, 2012, Elias Constians[5] (white, male), Used Car Manager and Perry Wright (white, male), New Car Manager told me that I was being discharged for insubordination.
>
> ii. The employer['s] reason for my discharge is pretext for retaliation.
>
> iii. I believe I have been retaliated against for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, with respect to discharge.

ECF No. 1-2.

Now, in her proposed amended complaint, Brent claims that, "[o]n Friday, September 21, 2012, in a meeting with Mr. Sanjeev Sawhney, Defendants' Internet Sales Manager, Ms. Brent complained about, and thereby opposed, Defendants' discriminatory and harassing conduct," which included the "frequent[] . . . use of derogatory sexual and racial language by managers

---

[4] Brent provides Sawhney's last name in her proposed amended complaint. Am. Compl. ¶ 38.

[5] Brent spells this manager's name "Costianes" in her proposed amended complaint; I use the spelling "Costianes" elsewhere in this Memorandum Opinion. Am. Compl. ¶ 35.

employed by Defendants," namely Costianes and Wright. Am. Compl. ¶¶ 33, 34, 38. She lists numerous statements that Costianes and Wright made. *Id.* ¶¶ 36–37. According to Brent, on Thursday, September 27, 2012, Wright and Costianes, "the two individuals about whom Ms. Brent had complained to Mr. Sawhney only six days prior, . . . informed her that she had been terminated" for "an incident of alleged insubordination" that occurred on September 26, 2012. *Id.* ¶¶ 39, 41. She views her termination as retaliation for her statements to Sawhney. *See id.* ¶ 50.

In her Reply in support of her original motion to amend, ECF No. 26, Brent explained that her one conversation with management on September 21, 2012 encompassed both her participation in the investigation of her co-worker's complaint and her assertions of discrimination:

> On or about September 21, 2012, Ms. Brent approached Mr. Sawhney to discuss concerns she had regarding the dealership. During that conversation, Mr. Sawhney asked Ms. Brent about Ms. Mary Walker, who no longer worked at the dealership, and also listened to Ms. Brent's complaints. It was during this conversation that Ms. Brent both "participat[ed] in a discrimination complaint investigation", as referenced in the Original Complain[t] and made her own complaints of discrimination, as described in the proposed Amended Complaint.
>
> In particular, Ms. Brent informed Mr. Sawhney that both Mr. Wright and Mr. Costianes frequently made derogatory comments about women (referring to them as "b----es"), derogatory comments about race, and derogatory comments about individuals whom they perceived to be homosexual. Mr. Sawhney did not inquire into the particular comments which were made by Messrs. Wright and Costianes, but Ms. Brent included some of those comments in the Intake Questionnaire which Ms. Brent submitted to the EEOC on December 12, 2012.

Pl.'s Reply 3–4, ECF No. 33 (citations to record omitted). Brent clarified that, when she spoke with Sawhney on September 21, 2012 "regarding the discrimination report made by Mary Walker," she "initially tried to down play Ms. Walker's allegations," but "ultimately [she] affirmed all of them and informed Sanjeev of additional derogatory sexist, homophobic and other discriminatory comments made by Elias Costian[e]s." *Id.* at 5 (citation to record omitted).

6

Clearly, Brent's September 21, 2012 meeting with Sawhney was part of the investigation of her co-worker's discrimination complaint, for which she was identified to Sawhney as a witness three days earlier.  *See* EEOC Claim.  That investigation was the event that led Brent to speak to management about the discrimination she experienced.  Brent is not altering her claim; she simply is providing details about the context in which she made her own allegations when interviewed as a part of that investigation.  As it turns out, when she gave Sawhney her own observations about discriminatory acts and statements, she informed him about discrimination and harassment she personally had experienced, rather than simply reporting incidents she had witnessed involving her co-worker.

Her proposed amended Title VII claim is consistent with the claims brought before the EEOC and in Brent's original Complaint, where she alleged that she was terminated for her participation in that investigation.  As Brent asserts, "the gravamen of the claims set forth in the proposed Amended Complaint and the claim contained in the Original Complaint are whether the Dealership terminated her in retaliation for the statements which she made to Mr. Sawhney on September 21, 2012."  Pl.'s Reply 15.  Both instances involved allegations of discrimination by the same actors, Wright and Costianes.  Notably, "[t]he Fourth Circuit has 'found exhaustion where . . . both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct.'"  *Thoopsamoot v. Reg'l Servs. Ctr.*, No. PWG-13-1663, 2014 WL 1120239, at *6 (D. Md. Mar. 19, 2014) (quoting *Sydnor,* 681 F.3d at 594).  In *Thoopsamoot*, the plaintiff's EEOC charge identified three discriminatory acts as bases for her discrimination and retaliation claims, and then before this Court the plaintiff alleged additional discriminatory acts as bases for her discrimination and retaliation claims.  *Id.*  This Court concluded that the plaintiff's "new claims of discrimination and retaliation," which "involve[d]

"'the same actor, but . . . different . . . conduct,' . . . reasonably follow[ed] from the facts alleged in Plaintiff's EEOC complaint." *Id.* (quoting *Sydnor,* 681 F.3d at 594). Likewise, Brent's proposed amendments reasonably relate to her EEOC claim, and a reasonable investigation of that claim would bring these facts to light. Therefore, Brent exhausted her administrative remedies for her amended Title VII claim, and consequently the claim is not futile. *See Jones*, 551 F.3d at 300; *Van Durr*, 2014 WL 4187821, at *1.

Nor are the amendments prejudicial to Priority 1. The employer contends that "Plaintiff argues that Defendant was on notice because the response to the EEOC Charge stated that Ms. Brent told Mr. Sawhney she was not happy at the dealership"; in Priority 1's view, "[b]eing unhappy is not analogous to being the victim of discrimination." Def.'s Ltr. Opp'n 4. This is a mischaracterization of Brent's argument. Certainly, Brent noted in her Reply to her original motion to amend that, when Priority 1 responded to her EEOC charge, it admitted that Brent informed Sawhney "that she was not happy at the dealership." Pl.'s Reply 6 (citations to record omitted). Yet, Brent did not contend that it was a simple statement that she was unhappy that put Priority 1 on notice that she felt retaliated against for statements she made. Rather, she insisted that her "Original Complaint provides fair notice of the assertions contained in the Amended Complaint," because her "alleg[ation] in the Original Complaint that [she] 'participated in a discrimination complaint" gave Priority 1 "notice that Plaintiff *complained of discrimination* during [her September 21, 2012] conversation [with Sawhney]." Pl.'s Reply 14 (emphasis added). It is clear that the original Complaint, which I construe liberally as a *pro se* filing, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), as well as the EEOC claim, put Priority 1 on notice that Brent felt that she was retaliated against for statements she made during the investigation of her co-worker's claim. *Sydnor*, 681 F.3d at 594; *Smith*, 202 F.3d at 247. Those statements

included allegations of discrimination against Brent. Therefore, Brent "may advance such claims in [this] civil suit." *Sydnor*, 681 F.3d at 594 (quoting *Smith*, 202 F.3d at 247).

Priority 1 also insists (without the slightest explanation how) that it would be "severely prejudice[d]" if Brent were allowed now to add a prayer for a jury trial, after having only checked the "jury demand" box on the Civil Cover Sheet without including a jury trial demand in her Complaint. Def.'s Ltr.Opp'n 5. Priority 1 does not cite any authority in support of its position, and my independent research has not uncovered any. Notably, Rule 38(b)(1) does not require that a party make its jury demand, if any, in its initial pleading or within a set amount of time after its initial pleading. *See* Fed. R. Civ. P. 38(b)(1) ("On any issue triable of right by a jury, a party may demand a jury by: (1) serving the other parties with a written demand—which may be included in *a* pleading—no later than 14 days after *the last* pleading directed to the issue is served." (emphasis added)). The amended complaint qualifies as a pleading that can contain a jury demand. Moreover, Priority 1 does it explain how it would be prejudiced, given that the change from a bench to a jury trial would not affect what Brent must prove or the discovery Priority 1 would need. In any event, discovery has not closed yet.

In sum, Brent's Motion for Leave to File Amended Complaint, ECF No. 77, IS GRANTED. Brent's letter request to file a motion to amend, ECF No. 73, IS DENIED AS MOOT. Brent's proposed amended complaint, ECF No. 77-1, IS ACCEPTED as the operative complaint.

A separate order follows.

/S/
Paul W. Grimm
United States District Judge

lyb